IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-53-FL

| | | |
|---|---|---|
| HELEN LOCKLEAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Helen Locklear ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, Disability Insurance Benefits ("DIB"), and Social Security Income (SSI). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-25] be granted, Defendants Motion for Judgment on the Pleadings [DE-31] be denied, and the matter be remanded to the Commissioner for further consideration.

**STATEMENT OF THE CASE**

Plaintiff protectively filed an application for a period of disability, DIB, and SSI on August 31, 2010 (Tr. 86-87), alleging disability beginning August 9, 2009 (Tr. 205, 207).[1] The applications were denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 86-87, 110-11, 145-49.) On July 23, 2012, a hearing was held before Administrative Law Judge Charles Woode ("ALJ"), who issued an unfavorable ruling on September 21, 2012. (Tr. 30, 36.) On January 28, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

**I.      Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks

---

[1] A disability determination is included in Plaintiff's file indicating that she applied for disability on July, 6, 2009. However, no other evidence is included in the record concerning that claim.

omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

**II.     Disability Determination**

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision

3

pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## III.     ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since August 9, 2010. (Tr. 21.) Next, the ALJ determined Plaintiff had the following severe impairments: "obesity, possible spondylosis lumbar; sacroiliitis, bilateral; degenerative disc disease with low back pain; chronic pain syndrome; disc hernia/bulge, lumbar; disc hernia, bulge cervical; major depressive disorder, recurrent, moderate; panic disorder; degenerative arthritis left knee." (Tr. 21-22.) The ALJ also found that Plaintiff has the following non-severe impairments: "GERD, mild degenerative disc disease with low back pain;[2] cervical spondylosis without myelopathy C5-6; hypertension; PTSD; generalized anxiety disorder; fibromyalgia; opioid dependency; and peripheral neuropathy." (Tr. 22.) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22-24.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the ability to perform sedentary work but provided the following limitations:

> The claimant can lift up to 10 pounds occasionally, stand or walk for approximately 2 hours of an 8-hour workday, and sit for approximately 6 hours of an 8-hour workday with normal breaks. The claimant is limited to no more than occasional stooping, crouching, balancing and climbing of ramps, stairs, ladders, ropes or

---

[2] The parties have not addressed the ALJ's finding that Plaintiff's degenerative disc disease was both a severe and non-severe impairment.

scaffolds.  The claimant should avoid concentrated exposure to hazards such as protected heights and dangerous machinery.

(Tr. 24.)   In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible.   (Tr. 25.)   At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work.   (Tr. 28.)   Nonetheless, at step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies.   (Tr. 29.)

## IV.   Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on numerous grounds.  Plaintiff first contends that the ALJ erred in his evaluation of Plaintiff's credibility. Second, Plaintiff asserts that the ALJ's analysis of the medical opinions of record is not supported by substantial evidence.   Third, Plaintiff contends that the ALJ erred in not accounting for Plaintiff's severe mental impairments in the RFC.   Lastly, Plaintiff argues that the ALJ erred by making medical determinations beyond his scope of authority.

### A.   Plaintiff's Credibility

Plaintiff asserts that the ALJ erred in his credibility analysis by failing to consider additional reasons for Plaintiff's non-compliance with treatment, in finding that Plaintiff misrepresented when she last worked, and in requiring that Plaintiff present objective evidence of her pain.  In assessing a claimant's credibility, the ALJ must follow a two-step process.   First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms.  *Craig*, 76 F.3d at 594–95.  Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms.  *Id.* at 595.  The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on

credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 96-7p, 1996 WL 374186, at *1. The ALJ must consider the following factors in addition to objective medical evidence when assessing the credibility of an individual's statements:

> (1) Claimant's daily activities;
> (2) The location, duration, frequency, and intensity of . . . pain or other symptoms;
> (3) Precipitating and aggravating factors;
> (4) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;
> (5) Treatment, other than medication, received for relief of pain or other symptoms;
> (6) Any measures used to relieve pain or other symptoms; and
> (7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2013); SSR 96-7p, 1996 WL 374186, at *3.

In the instant case, the ALJ's credibility analysis reads, in pertinent part:

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they exceed the objective medical evidence in the record. I acknowledge that the claimant reported being in pain during her testimony at the hearing. However, no adjustments, such as standing, were made to alleviate the pain. Although the claimant has described daily activities, which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.

6

> Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.
>
> . . . In the instant case, medical signs and laboratory findings do substantiate the claimant's physical impairment and is supportive that these impairments are capable to producing the alleged pain. However, I conclude that the claimant's subjective pain complaints are not fully credible and the record does not support her subjective complaints with objective findings on examination as comprehensively discussed in the body of this decision.
>
> . . . .
>
> . . . The claimant reported not working since the alleged onset date, but subsequent information revealed that this is not true. Records indicate that the claimant was working part-time as a daycare worker. The fact that the claimant provided inaccurate information on a matter so integral to determining disability suggests that much of what the claimant has alleged may be similarly unreliable. . . . [Claimant's physical therapy] records reveal instances of noncompliance with treatment, which suggests that symptoms may not be as severe as alleged. The claimant was discharged from physical therapy on June 27, 2011 due to poor compliance to therapy.

(Tr. 25-27 (citations to record omitted).)

### a. Noncompliance

Plaintiff alleges that the ALJ erred by not considering additional reasons for her noncompliance with treatment, specifically physical therapy. A claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the [claimant] is not following the treatment as prescribed and there are no good reasons." SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996). "However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.*

7

Here, Plaintiff asserts that the ALJ does not identify a single instance of noncompliance, and that she ended treatment because she had completed her treatment and "plateaued." However, the ALJ noted, "Those records reveal instances of noncompliance with treatment, which suggests that symptoms may not be as severe as alleged. The claimant was discharged from physical therapy on June 27, 2011 due to poor compliance to therapy." (Tr. 27.) The ALJ's analysis is supported by substantial evidence in the medical record. On April 26, 2011, Plaintiff was described as "somewhat compliant with [home exercise program]." (Tr. 498.) On May 2, 2011, Plaintiff reported "some improvement of her symptoms but admits she is only doing her exercises 2 times daily." (Tr. 500.) On June 1, 2011, Plaintiff reported poor compliance due to a death in the family, she forgot her swimsuit for aquatic therapy, and she had not been wearing her TENS unit because it seemed to increase her lower back pain. (Tr. 516.) On June 9, 2011, Plaintiff's therapist indicated he was re-evaluating discharging her to a home exercise program "secondary to poor compliance and minimal gains. (Tr. 519.) On June 27, 2011, Plaintiff's therapist noted, "[Patient's] poor compliance to therapy leads to the conclusion that [patient] has benefited to the max, from PT at this time." (Tr. 523.)

While Plaintiff appears to have met some of her goals throughout physical therapy, Plaintiff's noncompliance with physical therapy is well documented in the medical record. The evidence suggests that Plaintiff was discharged because she had reached maximum improvement given her noncompliance. Thus, the ALJ's credibility finding regarding noncompliance is supported by substantial evidence and should be upheld.

### b. Date Last Worked

Next, Plaintiff argues that the ALJ erred by finding that Plaintiff's testimony was unreliable because she had misrepresented when she last worked. Plaintiff at all times maintained

that she worked full-time up until August 9, 2009, at which time she began working part-time in a daycare. The record, including Plaintiff's testimony, indicates she worked part-time until December 2010. (Tr. 42, 71, 94, 265, 277, 284, 430, 435, 452, 605.) There is one reference to Plaintiff working in January 2011. (Tr. 450.) Plaintiff's testimony and the other evidence of record indicate that Plaintiff worked four hours a day at the daycare center. According to the ALJ, Plaintiff's part-time work did not reach SGA levels during the relevant time period. Thus, the ALJ's assessment that Plaintiff misrepresented the date on which she stopped working is not supported by substantial evidence.

### c. Pain

Plaintiff further alleges that the ALJ improperly required objective evidence of the severity of Plaintiff's pain. A claimant is not required to provide objective medical evidence of her pain. SSR 96-7p, 1996 WL 374186, at *6; *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.919(c)(2). However, objective medical evidence "is a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of" a claimant's pain. 20 C.F.R. §§ 404.1529(c)(2), 416.919(c)(2). Where objective medical evidence is present, the ALJ "must consider it in evaluating the individual's statements." SSR 96-7p, 1996 WL 374186, at *6.

Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they exceed the objective medical evidence in the record." (Tr. 25.) The ALJ further stated, "I conclude that the claimant's subjective pain complaints are not fully credible and the record does not support her subjective complaints with objective findings on examination as comprehensively discussed in the body of this decision." (*Id.*)

While Plaintiff's tests in 2010 and early 2011 showed only mild degenerative changes in Plaintiff's spine, mild foraminal narrowing, and a radiographically normal spine, Plaintiff also had objective indications of pain that were not addressed in the ALJ's decision. Plaintiff had numerous positive straight leg raise tests, indicative of lower back pain, on August 4, 2010, January 20, 2011, February 22, 2011, March 16, 2011, April 6, 2011, May 4, 2011, June 1, 2011 (Tr. 321, 472, 477, 480, 483, 622.) On January 25, 2011, it was noted that Plaintiff had "grinding crepitus" and on April 26, 2012, Plaintiff's physician recorded that Plaintiff had "significant crepitus palpable and audible." (Tr. 612, 626.) Furthermore, Plaintiff's medical records indicate that she had twelve out of eighteen tenderpoints on November 12, 2010, January 20, 2011, and March 16, 2011, indicating a diagnosis of fibromyalgia. (Tr. 472, 617, 622.) Because the ALJ does not resolve inconsistencies in the medical record concerning the objective medical evidence reflective of Plaintiff's pain, the undersigned cannot determine whether the ALJ's credibility finding is supported by substantial evidence. Thus, the decision should be remanded for further findings on Plaintiff's credibility concerning her subjective complaints of pain.

### B. Treating Physician

#### a. Weight

Plaintiff asserts that the ALJ erred when he gave Dr. Charles S. Hawthorn's medical opinion some weight and improperly characterized the absence of limitations provided by other treating physicians. Plaintiff further argues that Dr. Hawthorn was merely an examining physician and that the ALJ did not properly explain his allocation of weight.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). An ALJ

must further "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7 (Jul. 2, 1996). As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R § 404.1527(b) & (c); *see also Monroe v. Colvin*, No. 7:13-CV-74-FL, 2014 WL 7404136, at *16 (E.D.N.C. Dec. 30, 2014). Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Controlling weight will be given to "a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* § 404.1527(c)(2); *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must determine the weight to be given the opinion, considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 C.F.R. 404.1527(c)(2)–(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

11

Case 7:14-cv-00053-FL   Document 33   Filed 02/09/15   Page 11 of 15

The ALJ gave Dr. Hawthorn some weight stating, "[Dr. Hawthorn] did not see any contraindication to the claimant working 8 hours a day if she felt like it. I find that there are medically determinable impairments in the file that could reasonably cause some work limitations." (Tr. 28.) The ALJ gave the state agency medical and psychological consultants' initial and reconsideration opinions great weight, stating:

> [T]hey are supported by the nature of treatment received by the claimant. In [particular, although the claimant takes an array of medications, the evidence of record only reveals conservative treatment throughout. Further, they are consistent with x-rays, which show mild changes. Additionally . . . , records indicate continued work activity after the alleged onset date. Furthermore, they are consistent with the medical evidence of record, which shows no evidence of inpatient treatment or hospitalizations or ongoing mental health counseling.

(*Id.*) There is no discussion of the medical opinions of Dr. Monica Carrion-Jones limiting Plaintiff to working only four hours a day included in visitation notes on November 12, 2010, December 17, 2010, and January 20, 2011. (Tr. 618, 621, 624.) This limitation on Plaintiff's work capabilities was given after Dr. Hawthorn's opinion and after the state agency consultants' initial opinions. Neither had the benefit of reviewing this opinion alongside the longitudinal record.

Because the ALJ did not discuss Dr. Carrion-Jones's opinion concerning Plaintiff's work capabilities, the undersigned cannot determine whether the ALJ's allotment of weight as to each medical opinion is supported by substantial evidence. Thus, this claim should be remanded for further findings concerning Dr. Carrion-Jones's opinions and to address inconsistencies between her opinions and those of the other medical sources.

### b. Inconsistent Findings

Plaintiff claims that remand is also warranted due to inconsistent findings made by the ALJ concerning Plaintiff's mental health treatment. The ALJ stated that the agency medical and

12

Case 7:14-cv-00053-FL   Document 33   Filed 02/09/15   Page 12 of 15

psychological consultants' findings were "consistent with the medical evidence of record, which shows no evidence of inpatient psychiatric treatment or hospitalizations or ongoing mental health counseling." (Tr. 28.) However, earlier in his opinion the ALJ noted that Plaintiff underwent "periodic" mental health treatment with prescription medication. (Tr. 27.) He provided an overview of Plaintiff's mental health appointments on November 17, 2010, December 1, 2011, January 27, 2012, and February 10, 2012. (*Id.*) Furthermore, on February 20, 2012, Plaintiff was encouraged to attend therapy sessions regularly. It appears that in giving great weight to the state agency consultants, the ALJ relied on the erroneous assertion that Plaintiff was not receiving ongoing treatment, when earlier in his decision he indicated the opposite. As such, the weight determination is not supported by substantial evidence and should be remanded to the Commissioner for further proceedings.

      **C.    Residual Functional Capacity**

Plaintiff further alleges that the ALJ committed reversible error when he found Plaintiff had severe mental impairments but did not provide for them within the RFC. The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3). Finally, the RFC assessment "must include a discussion of why reported symptom-related functional

limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

Plaintiff argues that the ALJ erred by not including a non-exertional limitation that Plaintiff be limited to work comprised of simple, routine, and repetitive tasks (SRRTs). Assuming that the ALJ erred in this regard, the record demonstrates that any error was harmless. Though the ALJ did not include SRRTs as a limitation, the VE testified that the jobs identified as a result of the ALJ's second hypothetical "are unskilled, simple, one-two step processes" and that a limitation to SRRTs would not make any difference. (Tr. 63-64.) Because these are the jobs that the ALJ found Plaintiff could perform, the ALJ's failure to include SRRTs in the RFC determination is without consequence.

**D.     Medical Determination**

Lastly, Plaintiff contends the ALJ erred by making medical determinations beyond the scope of his authority. Plaintiff specifically takes issue with the ALJ's characterization of some of Plaintiff's conditions as mild. Plaintiff further asserts that the ALJ should have obtained a medical expert in order to interpret the medical record.

An ALJ is required to consider the objective medical evidence, including laboratory findings, when assessing disability. 20 C.F.R. §§ 404.1512(b), 404.1529(a), 404.912(b), 404.919(a). An ALJ must obtain a medical expert's opinion "[t]o evaluate and interpret background medical test data." HALLEX I-2-5-34(B). An ALJ may obtain a medical expert's opinion in "determining the degree of severity of a claimant's physical or mental impairment." HALLEX I-2-5-34(A).

Here, the ALJ noted several findings within his decision indicating that Plaintiff had small heel spurs, mild ankle swelling, mild degenerative disc disease, mild left neural foraminal

14

Case 7:14-cv-00053-FL   Document 33   Filed 02/09/15   Page 14 of 15

narrowing, no spinal canal stenosis, and that changes in Plaintiff's back were mild. In these instances, the ALJ was not evaluating or interpreting medical test data. He was reporting the interpretation provided by Plaintiff's treating physicians. Thus, the ALJ did not err in his discussion of the medical record.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-25] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-31] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 9th day of February 2015.

_____
KIMBERLY A. SWANK
United States Magistrate Judge